# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-621

IN RE: JDH

**APPLYING FOR INTRAFAMILY ADOPTION**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 200-0234
HONORABLE PENELOPE RICHARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

W. Thomas Barrett, III
Attorney at Law
3401 Ryan Street, Suite 307
Lake Charles, LA 70605
(337) 474-7311
COUNSEL FOR APPELLEE:
    HDD

**Todd H. Melton**
**Todd H. Melton, L.L.C.**
**Attorney at Law**
**P. O. Box 847**
**Lake Charles, LA 70602-0847**
**(337) 439-2979**
**COUNSEL FOR APPELLANTS:**
    **JDH**
    **TBH**

**PICKETT, Judge.**

TBH[1] and JDH appeal the trial court's determination that a provision in the
Agreement for Post-Adoption Continuing Contact (Agreement) they entered with
HDD regarding his continuing contact with his daughter, ABH[2] is "void as against
public policy in this case." They also appeal the trial court's enforcement of the
Agreement and modification of HDD's visitation with ABH. For the following
reasons, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

TBH and HDD married in 2005, and ABH was born in June 2006. In
August 2008, TBH and HDD divorced. TBH married JDH in September 2009,
and JDH filed a Petition for Intrafamily Adoption to adopt ABH in July 2012. In
his petition, JDH alleged that HDD' consent to the adoption was not required
because HDD had failed to maintain contact with ABH for a period exceeding
twelve months and to pay child support as ordered by the trial court. HDD
answered the Petition, and on January 24, 2011, a hearing was held on the
adoption. At the hearing, HDD voluntarily consented to the adoption in exchange
for visitation with ABH as set forth in the Agreement executed by the parties the
day of the hearing. That same day, the trial court signed a Final Decree and
Judgment of Adoption.

Pursuant to the Agreement, HDD was to have the following visitation with
ABH:

> [T]hree full twenty-four hour days of visitation with the minor child,
> ABH, per month, said visitation to commence at the time of the

---

[1] The parties and the minor child are referred to by their initials to preserve their
anonymity in this confidential proceeding.

[2] ABH's initials reflect that her name was changed in the Final Decree and Judgment of
Adoption rendered by the trial court.

execution hereof. The particular days of visitation each month shall be discussed and determined by the parties hereto during the week prior to the beginning of each month, and due consideration shall be given to the schedules of all concerned particularly those of [HDD's mother and sister].

The Agreement conditioned HDD's visitation with ABH on his making payments toward the arrearages he owed TBH in child support. Specifically, the Agreement provided:

> [HDD] shall make payments in the amount of FIVE HUNDRED AND NO/00 ($500) DOLLARS per month by cashier's check or money order to the office of Attorney Allen McCall on or before the 12th day of each month, said payments representing arrearages owed for the support of the minor child, ABH. In the event of a default on any of these payments, JDH and TBH shall have the option to withhold future visitations from HDD.

As TBH and JDH noted in their brief, at the time the Agreement was entered, the parties were aware that HDD was going to serve jail time a on a DWI and agreed that during his incarceration, visitation and the $500 payments would be suspended. Four months after the parties entered the Agreement, TBH and JDH filed a rule to show cause why it should not be terminated and nullified. They alleged that HDD had violated the terms of the agreement by failing to make the $500 monthly payments toward the arrearages he owed, that he had been uncooperative in coordinating the visitation and exchanging ABH for visitation, and that he had threatened harm when he was uncooperative regarding visitation. HDD asserts he was incarcerated during the time TBH and JDH alleged he failed to make the $500 payments, and there is no indication TBH and JDH disputed that HDD was incarcerated as he claimed.

A hearing on the rule was scheduled for August 8, 2011, at which time the trial court ordered the parties to mediation as provided in the Agreement. The

2

mediation failed, and HDD filed a rule to enforce the Agreement, alleging that TBH and JDH were not allowing the visitation set out in the Agreement.

On February 8, 2012, a hearing was held on HDD's rule. At the hearing, the parties entered another stipulation. A judgment on the stipulation was not presented to the trial court until March 8, 2013.[3] The judgment contained one provision: if HDD missed one payment toward his arrearages, his visitation terminated. Other issues were addressed at the February 8, 2012 hearing but not included in the judgment.

On February 27, 2013, HDD filed a Rule for Contempt, alleging that TBH unilaterally terminated his visitation privileges with ABH. A trial was held December 9, 2013. The trial court took the matter under advisement and on December 27, 2013, issued Written Reasons for Ruling in which it made the following pertinent findings of fact: (1) "[c]onditioning HDD's visitation with ABH upon his payment of arrears each month is contrary to the parties' assertion that the agreement was in the best interest of the child"; and (2) TBH has failed to abide by the [Agreement] in that she did not allow HDD's visitation with ABH in accordance with the agreement." The trial court specified that it did "not find that a payment made three (3) days late is a 'missed' payment for the purposes of unilaterally terminating visitation."

After making these findings of fact, the trial court concluded "that the provision conditioning HDD's visitation with ABH on his not missing a payment toward the arrearages he owed is void as against public policy in this case." The trial court then modified the Agreement by making the general visitation privileges

---

[3] HDD's attorney at the February 2012 hearing withdrew from representing HDD in December 2012. HDD's new attorney enrolled in December 2012. TBH and JDH's attorney submitted the judgment for signature.

3

contained in the Agreement specific. For example, the Agreement provided HDD had three (3) full twenty-four hour days of visitation per month; the trial court modified that visitation to "the second weekend of each month from 5:00 p.m. on Friday until 5:00 p.m. on Sunday."

TBH and JDH appealed the trial court's judgment. On appeal, they assign two errors: (1) the trial court made a legal error in ruling that the visitation being conditioned on the payment of past due child support, by a non-parent, was against public policy, and (2) the trial court erred in enforcing and modifying the parties' contract.

## DISCUSSION

Before addressing the assignments of error, we note that TBH and JDH do not assign error with the trial court's findings of fact. The trial court's findings of fact are integral to our review of TBH and JBH's assignments of error. After reviewing the record and finding the trial court's findings of fact accurate, we adopt them as our own[4]:

> The evidence is clear that TBH's reason for entering into the Post-Adoption Continuing Contact Agreement was to obtain HDD's voluntary consent to the Intrafamily Adoption of ABH by her husband, JDH. She testified that at that time, she felt it was in ABH's best interest for JDH to be her father. It is also clear that HDD gave his consent to the adoption because he was fearful that if he went to trial and lost, then he would never be allowed to see his child again. By giving his consent to the adoption, he was guaranteed to have at least minimum contact with his daughter. However, TBH and JDH[] conditioned HDD continuing contact with ABH on the payment of arrearage of child support owed prior to the adoption. The arrearage was to be paid at $500 per month on or before the 12th day of each month. There is nothing in the evidence which contains the exact total of the arrearage owed by HDD.

---

[4] To maintain the confidentiality of the parties and minor child, pertinent changes have also been made to these portions of the trial court's Reasons for Ruling.

4

. . . .

At the onset, the court recognizes that HDD's parental rights have been terminated and his visitation rights are limited in accordance with the Post-Adoption Continuing Contact Agreement. According to the testimony of HDD, he was never allowed to exercise visitation according to the agreement - he never exercised three - 24 hour periods during the month. He testified that if ABH had plans such as a wedding, family event, or birthday party to attend, TBH and JDH would not allow him to have visitation and he was not given the opportunity to make up the missed visitation. TBH acknowledged that there were times when ABH had plans and she would not allow the visitation to take place. She also acknowledged that she has not allowed visitation to take place since June 2012. Based on this, the court finds that TBH has failed to abide by the continued contact agreement.

After the stipulation was entered into on February 8, 2012, HDD made the March and April payments on or before the 12[th] day of the month. The May payment was made on May 14, 2012, which was a Monday, making May 12, 2012, a Saturday. The June payment was made on June 15, 2012, and was promptly returned to HDD's attorney stating that it was untimely. TBH and JDH have not allowed any visitation between ABH and HDD due to his late payment. Contained in Mr. H. Alan McCall's records is a message from JDH dated June 12, 2012, at 2:24 p.m. The note indicates that JDH called Mr. McCall's office and he was advised that no payment had been made. (See Joint Exhibit 1.) It is obvious to this court from the records and the testimony of the witnesses that TBH and JDH were using this provision to unilaterally terminate the visitation between HDD and ABH. At this point, TBH did not even communicate to HDD that she was terminating his visitation. In fact, for months, TBH led [HDD's mother] to believe that there was a chance that they could continue to visit with ABH. (See [HDD] Exhibit 7.) [HDD's mother] testified that she sent numerous text messages to TBH requesting and pleading to see or talk to ABH. Most were ignored by TBH. When questioned about this, TBH estimated that she only received two or three text messages from [HDD's mother]. This is contradicted by [HDD's mother's] testimony and [HDD] Exhibit number 7.

The court must decide the effect to be given this provision making HDD's continuing contact with ABH contingent upon his payment of the arrears owed. Mr. Barrett argues that it is against public policy to condition visitation upon the payment of child support, and, therefore the provision is null and void. The interest of a child is primary in any and all court considerations and visitation with a parent conditioned upon payments of support is not in the child's best interest. *Macaluso v. Macaluso*, 509 So. 2d 201 (La. App. 1 Cir. 1987). The principle of law that visitation privileges shall not be

conditioned upon the payments of child support has been supported throughout the years. *Fuge v. Uiterwyk*, 613 So.2d 717 (La. App. 4 Cir. 1993); *Crooks v. Crooks*, 425 So. 2d 385 (La. App. 3 Cir. 1982). Mr. Pizzolatto argues that the arrears that HDD agreed to pay was [sic] owed whether the adoption was granted or not, and that it was simply a recognition of what was already owed on an obligation that was terminated by the adoption. This is correct, and if it was not tied to HDD's visitation, there would be no issue. However, the payment of this obligation was a prerequisite to his continuing contact with ABH. The court recognizes the distinction between a current child support obligation and visitation between a non-custodial parent, and the payment of a debt owed for past child support and the limited visitation contained in a Post-Adoption Continuing Contact Agreement. However, in this case, HDD's only consideration for consenting to the adoption was that he would be allowed to have continued contact with ABH. TBH and JDH gained HDD's consent to the adoption in exchange for allowing him continuing contact with ABH. However, when TBH and JDH received the added provision of payment of arrears, HDD gained nothing. Conditioning HDD's visitation with ABH upon his payment of arrears each month, is contrary to the parties' assertion that the agreement was in the best interest of the child. Further, the court does not find that a payment made three (3) days late is a "missed" payment for the purposes of unilaterally terminating visitation.

The court finds that TBH has failed to abide by the Agreement for Post-Adoption Continuing Contact in that she did not allow HDD visitation with ABH in accordance with the agreement. The court further finds that the provision contained in the Agreement for Post-Adoption Continuing Contact conditioning HDD's visitation with ABH upon the timely payment of the arrearage each month is void as against public policy in this case.

### Did the Trial Court Commit Legal Error?

In their first assignment of error, TBH and JDH urge that the trial court made a legal error in ruling that the visitation being conditioned on the payment of past due child support, by a <u>nonparent</u>, was against public policy. When reviewing questions of law, appellate courts must discern whether the trial court's interpretation of the law is legally correct. If the appellate court finds that the trial court committed error, its legal conclusions are subject to de novo review. *Forum for Equality PAC v. McKeithen*, 04-2477, 04-2523 (La. 1/19/05), 893 So.2d 715.

6

TBH and JDH assert the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054 (2000) provides guidance regarding the considerations we must make in this case. We do not disagree. At issue in *Troxel* was a Washington statute that allowed "any person" to petition for visitation rights with a child and further authorized courts to grant visitation whenever such "visitation may serve the best interest of the child." The Supreme Court determined that the statute was unconstitutional because it interfered with the fundamental right of parents to rear their children. There is a vast difference between *Troxel* and this case. Here, TBH and JDH negotiated and consented to the terms of the Agreement. The state action at issue in *Troxel* is not present here to the extent that it is in *Troxel*. Here, the state action is only to enforce the Agreement negotiated and consented to by the parties.

TBH and JDH contend this case is "solely a matter of contract." Accepting this contention as true for the sake of argument, we find no error in the trial court's conclusion that conditioning HDD's visitation with ABH on the payment of his child support "arrearage each month is void as against public policy *in this case*." Pursuant to La.Civ.Code arts. 1759[5] and 1983,[6] TBH and JDH and HDD were obligated to act in good faith. The trial court accepted HDD's testimony that "he was never allowed to exercise visitation according to the agreement" because TBH

---

[5] Louisiana Civil Code Article 1759 provides: Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation.

[6] Louisiana Civil Code Article 1983 provides: Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.

"would not allow the visitation to take place" and found that TBH did not act in good faith under the terms of the Agreement.

The correctness of the trial court's conclusion is clear when one considers that the Agreement was not the only method for TBH and JDH to collect the arrearages owed by HDD; they could have sued him, obtained a judgment against him, and then enforced the judgment. To the contrary, the Agreement was HDD's only method of continuing contact with ABH. As the trial court found, TBH's failure to act in good faith and the unfairness that resulted to HDD show why the provision conditioning HDD's visitation on his payment of arrearages is "void as against public policy under the facts of this case."

TBH and JDH's unilateral termination of HDD's visitation with ABH compounded the unfairness of TBH's failure to perform her obligations under the Agreement in good faith. As argued by HDD, Louisiana does not condone such self-help in the context of judgments for child support or alimony. *Halcomb v. Halcomb*, 352 So.2d 1013 (La.1977).

> The policy reason behind this rule is obvious: the law does not want to encourage those owing alimony or child support to become involved in "self-help" by making their own determinations as to when they have satisfied their alimony or child support obligations by some method other than payment in accordance with the court order.

*Hunter v. Hunter*, 44,703, p. 6 (La.App. 2 Cir. 9/30/09), 21 So.3d 1032, 1036. This reasoning is especially true in cases such as this one, where one party takes advantage of the other by not acting in good faith.

Furthermore, as required by La.Ch. Code art. 1269.3 (F), the Agreement provides, in pertinent part: "we recognize that these minimum expectations must be preserved until such time as we modify them by mutual written agreement or the court modifies or terminates this Agreement in accordance with Louisiana

8

Children's Code Article 1269.8." Accordingly, the Agreement itself does not condone self-help.

### *Did the Trial Court Err in Enforcing and Modifying the Terms of the Parties' Contract?*

TBH and JDH also contend that the trial court committed legal error in enforcing and modifying the provisions of the Agreement. Pursuant to La.Ch. Code art. 1269.8(A) and the specific terms of the Agreement, the trial court retained jurisdiction to enforce, modify, or terminate the Agreement.

The trial court did not impose visitation on the parties that the parties did not agree to in the Agreement. It simply took the loose framework of the visitation provisions and made them specific, thereby reducing the issues on which the parties could disagree and also reducing the opportunity for one party to take unfair advantage of the other. For these reasons, we find no error with the trial court's enforcement and modification of the agreement.

### DISPOSITION

The judgment of the trial court is affirmed. All costs are assessed to TBH and JBH.

**AFFIRMED.**