*1034
 
 WILLIAMS, J.
 

 11Defendant, James Edwin Hunter, appeals a trial court’s finding that plaintiff, Albertine K. Hunter, was free from fault in the dissolution of their marriage. The court ordered Mr. Hunter to pay final periodic spousal support in the amount of $400 per month and arrearages for unpaid interim support in the amount of $49,410. For the reasons set forth herein, we affirm.
 

 FACTS
 

 James and Albertine Hunter were married on November 10, 1984 and physically separated on April 14, 2006. On May 9, 2006, Mrs. Hunter filed a petition for divorce, requesting interim spousal support and, following the divorce, final periodic support.
 

 A hearing officer conference was held on August 14, 2006. The hearing officer issued a recommendation to the court that Mr. Hunter pay Mrs. Hunter interim spousal support in the amount of $1,490 per month, retroactive to May 9, 2006, the date of judicial demand. On August 6, 2008, Mrs. Hunter filed a motion for rule to make the interim support judgment ex-ecutory and for contempt.
 
 [1]
 
 Following Mr. Hunter’s objection to the hearing officer’s recommendation, a trial was held on September 14, 2006. At the conclusion of the trial, the court implemented the hearing officer’s recommendation.
 

 A judgment of divorce was granted on September 8, 2008. On December 4, 2008, a hearing was held with regard to final periodic spousal support and the unpaid interim support. The court found that Mrs. Hunter 12was not at fault in the dissolution of the marriage and awarded her final periodic support in the amount of $400 per month. The court stated:
 

 Expressly noting that this Court finds Plaintiff in need and Defendant being possessed of the ability to pay, the focus turns to “fault....” While the thrust of Defendant’s argument centers around Plaintiffs fussing or nagging, such position, today, cannot overcome Plaintiffs request for relief. On the showing made, Defendant’s “nagging position” does not rise to the level of the type of conduct contemplated by state law which would constitute “fault.” Further, Defendant’s position relative to Plaintiffs “debt causing actions and/or inactions,” does not rise to the level of the type of conduct contemplated by state law which would constitute “fault.”
 

 The trial court also entered a judgment against Mr. Hunter in the amount of $49,410 “for past due interim support through December 8, 2008, together with legal interest on each installment from due date until paid.” Mr. Hunter appeals.
 

 DISCUSSION
 

 In his first assignment, Mr. Hunter contends the trial court erred in finding that Mrs. Hunter was free from fault in the dissolution of the marriage. Mr. Hunter argues that the testimony proved that Mrs. Hunter was clearly at fault in causing the breakup of the marriage.
 

 Fault
 

 In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay. LSA-C.C. art. 111. When a spouse has not been at fault and is in need
 
 *1035
 
 of | ¡¡support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support. LSA-C.C. art. 112.
 

 Fault is a threshold issue in a claim for spousal support.
 
 Walker v. Walker,
 
 41,573 (La.App.2d Cir.11/1/06), 942 So.2d 605;
 
 Hutson v. Hutson,
 
 39,901 (La.App.2d Cir.8/9/05), 908 So.2d 1231. Since the statutory law no longer specifies the type of fault which would constitute grounds to deny final periodic spousal support, legal fault must be determined according to the prior jurisprudential criteria.
 
 See Allen v. Allen,
 
 94-1090 (La.12/12/94), 648 So.2d 359;
 
 see also
 
 LSA-C.C. art. Ill, Revision Comments-1997, comment (c).
 

 The word “fault” contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties and responsibilities. A spouse is not deprived of spousal support after divorce simply because he or she was not totally blameless in the marital discord.
 
 Pearce v. Pearce,
 
 348 So.2d 75 (La.1977);
 
 Hutson, supra.
 

 Only misconduct of a serious nature, providing an independent contributory or proximate cause of the breakup, equates to legal fault.
 
 Walker, supra; Lyons v. Lyons,
 
 33,237 (La.App.2d Cir.10/10/00), 768 So.2d 853,
 
 writ denied,
 
 2000-3089 (La.1/5/01), 778 So.2d 1142. Legal fault includes, but is not limited to, habitual intemperance or excesses, cruel treatment or outrages and abandonment.
 
 Id.
 
 Mere bickering and fussing do not constitute cruel treatment for purposes of denying alimony. To prove cruel treatment, a party needs to show a continued pattern of mental harassment, nagging and griping by one spouse directed at the other so as to |4make the marriage insupportable.
 
 Walker, supra; Lyons, supra.
 
 The burden of proof is upon the claimant.
 
 Id.
 

 The trial court has immense discretion in matters regarding the determination of fault for purposes of precluding final periodic support. The trial court’s findings of fact on the issue of fault will not be disturbed unless manifestly erroneous.
 
 Walker, supra; Roan v. Roan,
 
 38,-383 (La.App.2d Cir.4/14/04), 870 So.2d 626. The factfinder has a right to accept or reject, in whole or in part, the testimony of any witness.
 
 Mizell v. Mizell,
 
 37,004 (La.App.2d Cir.3/7/03), 839 So.2d 1222, citing
 
 Walden v. Walden,
 
 2000-2911 (La.App. 1st Cir.8/14/02), 835 So.2d 513.
 

 In the instant case, Mrs. Hunter testified at length about the state of her health and the amount of debt she and Mr. Hunter accumulated during their marriage. She testified that she and Mr. Hunter had numerous financial and credit problems during their marriage and had sought bankruptcy protection on two occasions. Mrs. Hunter also testified that she had left Mr. Hunter on at least one occasion prior to filing the petition for divorce “because of his temper and fit throwing.” She testified that she stayed away approximately six or seven weeks and she “thought that maybe if I left for a little while things would get better.” Mrs. Hunter testified that she filed the petition for divorce because Mr. Hunter told her he wanted a divorce because “he just wasn’t happy.” She denied being at fault in the dissolution of the marriage, stating, “I was a very good wife.”
 

 Mr. Hunter testified with regard to Mrs. Hunter’s conduct during the marriage. He testified that Mrs. Hunter had borrowed money and received Rcredit cards without his knowledge on several occasions; she failed to pay the mortgage on their house on at least one occasion while they were in Chapter 13 bankruptcy, causing an increase in the monthly payment to
 
 *1036
 
 the bankruptcy trastee; she was arrested for shoplifting on one occasion; she had poor housekeeping habits. Mr. Hunter also testified that Mrs. Hunter’s act of leaving him on the one prior occasion had nothing to do with his temper. He stated that she left “because she knew the marriage had been failing for a while, and ... we just [were not] getting along good.... ” Mr. Hunter further testified that the issues with bankruptcy and credit problems played “a big part” in the dissolution of the marriage.
 

 While it appears that Mrs. Hunter was not totally blameless in the dissolution of the marriage, we find that the trial court did not commit manifest error in finding that Mrs. Hunter’s actions did not constitute fault. Mr. Hunter testified with regard to his dissatisfaction with Mrs. Hunter’s conduct throughout the marriage, primarily concerning the way she handled financial and credit issues. It is clear that the couple’s finances were in disarray — they had filed for bankruptcy protection at least twice during then* marriage and at least one vehicle had been repossessed by a creditor. Mrs. Hunter testified that Mr. Hunter asked for a divorce because “he just wasn’t happy;” Mr. Hunter testified that the credit problems contributed to the breakup of the marriage; however, there was no indication that Mrs. Hunter’s alleged misconduct or behavior with regard to the couple’s financial. affairs provided an independent contributory or primary cause of the breakup of the marriage. Mr. Hunter clearly stated that he and Mrs. |(iHunter just were not “getting along good [sic].” Therefore, we find no error in the trial court’s determination that Mrs. Hunter met her burden of proving that she was not at fault in the dissolution of the marriage.
 

 Arrearages
 

 Mr. Hunter also contends the court erred in concluding that Mrs. Hunter was entitled to past due interim spousal support in the amount of $49,410. He alleges that he and Mrs. Hunter had entered into an agreement to modify the trial court’s interim support judgment.
 

 An alimony or child support judgment remains in effect until the party liable has it modified or terminated by the court.
 
 Halcomb v. Halcomb,
 
 352 So.2d 1013 (La.1977);
 
 Mizell, supra.
 
 The policy reason behind this rale is obvious: the law does not want to encourage those owing alimony or child support to become involved in “self-help” by making their own determinations as to when they have satisfied their alimony or child support obligations by some method other than payment in accordance with the court order.
 
 Mizell, supra,
 
 citing
 
 Vallaire v. Vallaire,
 
 433 So.2d 315 (La.App. 1st Cir.1983).
 

 There is an exception to this general rule when the evidence shows the parties have expressly agreed to waive or otherwise modify the court-ordered payments.
 
 Id.
 
 Mere acquiescence in the obli-gor’s failure to pay the full amount of support does not constitute a waiver.
 
 Id.; Weldon v. Weldon,
 
 98-1173 (La.App. 3d Cir.2/3/99), 737 So.2d 812. The burden of proof of the existence of the agreement is on the party seeking to modify the obligation under the judgment.
 
 Mizell, supra,
 
 citing
 
 Gomez v. Gomez,
 
 421 |7So.2d 426 (La.App. 1st Cir.1982).
 

 In the instant case, as stated above, on October 6, 2006, the court ordered Mr. Hunter to pay Mrs. Hunter interim spousal support in the amount of $1,490 per month, retroactive to the date of judicial demand. Mrs. Hunter testified that Mr. Hunter paid her $100 per week from October 2006 until September 2007. On Au
 
 *1037
 
 gust 6, 2008, Mrs. Hunter filed a rule to make the judgment for the unpaid interim spousal support executory. Mr. Hunter never sought a modification of the interim spousal support award.
 

 Mr. Hunter testified that he and Mrs. Hunter discussed the court’s order and “she admitted that I couldn’t come up with that amount....” Mr. Hunter testified that he and Mrs. Hunter agreed that he would pay her $100 per week “plus her auto insurance, the house insurance, her health insurance, [and] the bankruptcy note.... ” Mr. Hunter also testified that he agreed to postpone the date of the finalization of the divorce so that Mrs. Hunter could keep her health insurance until she completed some pending medical treatments.
 
 [2]
 
 Mr. Hunter stated that he thought that if he kept his part of the agreement, he would not have to pay interim spousal support or arrearages.
 

 Mrs. Hunter denied entering into an agreement with Mr. Hunter to modify the payments owed under the trial court’s judgment. She testified that after the interim spousal support was ordered, Mr. Hunter began paying her $100 per week. Mrs. Hunter testified that she accepted the payments because Mr. Hunter told her that he could not afford to pay any more and ls“$100 a week was better than nothing.” Mrs. Hunter also testified that she and Mr. Hunter agreed, through their attorneys, to continue the divorce hearing because she had been diagnosed with breast cancer and would no longer have health insurance once the divorce became final. Mrs. Hunter further stated that she had not previously instituted a claim against Mr. Hunter for non-payment of interim spousal support because she was afraid of him because he came to her house and threatened her, saying “I will see you dead before you get a dime.”
 

 After hearing the testimony, the trial court found that the parties had not entered into an agreement to reduce the interim spousal support payments. The court stated, “[W]e’ve heard nothing in my view that would justify not paying the arrears. In other words, ... he should [have] paid it and that’s just the way it is.”
 

 After a careful review of the record, we conclude that there was no evidence presented to substantiate Mr. Hunter’s contention that he and Mrs. Hunter had entered into an agreement to modify the support payments. The trial court was in the best position to judge the credibility of the witnesses and to accept or reject their testimony. Both parties testified that they agreed, through their attorneys, to continue the finalization of the divorce so that Mrs. Hunter could complete her cancer treatment and surgeries. At no time did Mr. Hunter seek to obtain a written agreement or to formally modify the judgment. We find no manifest error in the trial court’s findings.
 

 CONCLUSION
 

 For the reasons set forth herein, we affirm the trial court’s judgment, | ¡¡ordering James Edwin Hunter to pay final periodic support in the amount of $400 per month. We also affirm the court’s assessment of arrearages for unpaid interim periodic support in the amount of $49,410. Costs of this appeal are assessed to the defendant, James Edwin Hunter.
 

 AFFIRMED.
 

 [1]
 

 . Mrs. Hunter apparently abandoned the contempt claim. Counsel for Mrs. Hunter stated in open court, “[W]e agreed to forfeit — not hold him in contempt.”
 

 [2]
 

 . The testimony revealed that Mrs. Hunter was diagnosed with breast cancer around the time the petition for divorce was filed and she underwent several surgeries.