CARAWAY, J.
l,In these proceedings for spousal support, the appellant contests the judgment granting his former spouse final periodic spousal support of $750 per month. For the following reasons, we affirm.

Facts

After a 25-year marriage, Luther Stowe was granted a judgment of divorce from his wife, Charleen, on December 12, 2013, on the grounds of their living separate and apart without reconciliation for more than 180 days. By reconventional demand, Charleen sought final periodic support from Luther. A hearing on the issues of fault and amount of support occurred on March 10, 2014. Luther, Charleen, and Luther’s daughter gave testimony, but no documentation of income or other financial data were filed in evidence. After the hearing, the trial court granted Charleen final periodic spousal support of $750 per month retroactive in accordance with law. The court also granted Luther a credit for support paid subsequent to demand, excluding payments made on the car note and insurance. This appeal by Luther ensued.

Discussion

In a proceeding for divorce or thereafter, the court may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage. La. C.C. art. 111. Fault is a threshold issue in a claim for spousal support. King v. King, 48,881 (La.App.2d Cir.2/26/14), 136 So.3d 941; Hunter v. Hunter, 44,703 (La.App.2d Cir.9/30/09), 21 So.3d 1032. A spouse seeking final | ¿periodic spousal support must be without fault and the burden of proof is on the claimant. King, supra. The word fault contemplates conduct or substantial acts of commission or omission by a spouse viola-tive of his or her marital duties and responsibilities. A spouse is not deprived of spousal support after divorce simply because he or she was not totally blameless in the marital discord. Id. Only misconduct of a serious nature, providing an independent contributory or proximate cause of the breakup, equates to legal fault. Id. Legal fault includes, but is not limited to, habitual intemperance or excesses, cruel treatment or outrages and abandonment. King, supra; Hunter, supra. Mere bickering and fussing do not constitute cruel treatment for purposes of determining alimony. Id.
 Final periodic spousal support is limited to an amount sufficient for maintenance, as opposed to continuance of an accustomed style of living. Richards v. Richards, 49,260 (La.App.2d Cir.8/13/14), 147 So.3d 800. Maintenance includes the basic necessities of life, such as food, shelter, clothing, transportation, medical and drug expenses, utilities, household maintenance, and income tax liability generated by alimony payments. Id. The claimant spouse does not need to prove necessitous circumstances. Id. The court shall consider all relevant factors in determining the amount and duration of final support, including:
1) The income and means of the parties, including the liquidity of such means.
2) The financial obligations of the parties, including any interim allowance or final child support obligation.
3) The earning capacity of the parties.
*641 4) The effect of custody of children upon a party’s earning capacity.
5) The time necessary for the claimant to acquire appropriate education, training, or employment.
|s6) The health and age of the parties.
7) The duration of the marriage.
8) The tax consequences to either or both parties.
9) The existence, effect, and duration of any act of domestic abuse committed by the other spouse upon the claimant, regardless of whether the other spouse was prosecuted for the act of domestic violence.
La. C.C. art. 112(C).
The sum awarded for final periodic support shall not exceed one-third of the obli-gor’s net income. La. C.C. art. 112(D).
Relating to the evidence required for a determination of income for spousal support, La. R.S. 9:326(A) provides:
Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings. Suitable documentation of current earnings shall include but not be limited to pay stubs or employer statements. The documentation shall include a copy of the party’s most recent federal tax return. A copy of the statement and documentation shall be provided to the other party. When an obligor has an ownership interest in a business, suitable documentation shall include but is not limited to the last three personal and business state and federal income tax returns, including all attachments and all schedules, specifically Schedule K-l and W-2 forms, 1099 forms, and amendments, the most recent profit and loss statements, balance sheets, financial statements, quarterly sales tax reports, personal and business bank account statements, receipts, and expenses. A copy of all statements and documentation shall be provided to the other party.
No abuse of the trial court’s discretion occurs when the record supports the trial court’s award of interim spousal support when the needs of a claimant spouse are established through testimony alone with no documentary evidence in support thereof. Short v. Short, 11-1084 (La.App. 5th Cir.5/22/12), 96 So.3d 552.
A trial court’s factual determinations of fault will not be disturbed unless it is manifestly erroneous or clearly wrong. King, supra. Likewise, 14the trial court is vested with much discretion in determining awards of spousal support, and such determinations will not be disturbed absent a clear abuse of discretion. Richards, supra.
Spousal support of any kind, except that paid pursuant to an interim allowance award, provided by the debtor from the date of judicial demand to the date the support judgment is rendered, to or on behalf of the spouse for whom support is ordered, shall be credited to the debtor against the amount of the judgment. La. R.S. 9:321(D).
Credit to the alimony obligation for car payments can ■ be disallowed absent an agreement between the parties that the payments would qualify as an alternate method of alimony; the paying spouse is free to seek an appropriate credit in the community property settlement. See Thompson v. Thompson, 428 So.2d 858 (La.App. 5th Cir.1983). Likewise, credits to alimony payments can be disallowed for payments made on the mortgages of the parties’ homes since the issue is more properly addressed in a community property partition. See Short, supra.
On appeal Luther argues that the trial court erred in finding Charleen free from *642 fault due to her failure to meet her burden of proof through the testimony presented. Luther also argues that Charleen failed to establish both her need for spousal support and his ability to pay. . Luther contends that the testimony alone, without corroborating documentation of the income or expenses of either party, was insufficient to meet Charleen’s burden of showing the income and financial obligations of the parties. He also points out that the trial court failed to consider the future sale of the | .^matrimonial domicile as a factor in determining the amount and duration of support, that Charleen’s self-serving testimony was insufficient to establish her lack of earning capacity or current health conditions and that there was no evidence regarding the time necessary for her to gain education or employment. Finally, Luther argues that the award was excessive and erroneously denied him credit for the car note and insurance payments made on a car which remained in Charleen’s possession.
When called on cross-examination, Luther testified that he was employed as a truck driver and earned approximately $52,000 annually. He and Charleen had purchased a home 12 years earlier for $53,000, and he was attempting to sell it for $35,000. Luther testified that Char-leen was using the automobile which was community property. Luther explained that he paid a $300 monthly car note and that he owed approximately $10,000 of the $17,000 paid for the car three years ago. He got behind on the payments in the last year and remained delinquent on the obligation.
Charleen testified that she and Luther had one child together. She was a homemaker, took care of the children and paid the bills and expenses while the two were married. According to Charleen, Luther left her for another woman and Charleen discovered the relationship in June of 2012. The two did not have “everyday problems,” but fought over money and the payment of their bills. The two were not fighting at the time Luther left her. When asked what fault she had in the breakup of the marriage, Charleen stated that Luther told her she “griped too much.”
IfiAt the time of her testimony, Charleen lived “between my daughters and a friend.” She explained that in the past year, she rotated between three locations. While staying with her daughters, Char-leen was one of five total residents. She shared her friends’ home with two other people. Charleen had moved to Monroe with friends until the proceedings could be completed. Luther asked her to move out of their home because he wanted to sell it.
Charleen received a monthly Social Security Disability check of $639.90 from which $149 was deducted for Medicare, leaving a total of $535. It was Charleen’s desire to get her own apartment in Section 8 housing, which would take six months to a year. Because she did not work, Char-leen testified that until she received government housing, she did not have enough money to live in her own residence. She bought her own food, fuel, medicine, clothing and dog food when she stayed with others. Charleen estimated that it would cost her between $200-$500 monthly rent, plus utilities, laundry and cable, for either a one-bedroom apartment, duplex or small house. She testified that her expenses would also eventually include her car payment and insurance. She estimated spending $300/month for food and laundry and $195 for fuel (she used one tank of gas per week). She was required to pay $125 every six months for doctor visits (her daughter helped her with this amount) and $90 per month for medicine.
*643 Charleen testified that she received money from family and friends approximately once a month when she fell short of funds. For example, her church gave her $340 for wood plus another $50 for fuel to come to court. 17Friends gave her $250 in December for travel to court and $100 to help find a lawyer. Charleen had attempted to get food stamps but was denied. She estimated that each month she was $380 short and charged this balance on credit cards. She had two credit cards on which she owed approximately $1,600. She was able to reduce her debt on the cards to that amount through the help of friends.
Charleen had a high school diploma and did not attend college or trade school. She last worked in 2000 at a wrecker service. She did not work because she became disabled in 2001 after a car accident. Charleen testified that she had undergone 14 surgeries to enable her to walk again. She spent 2½ months in the hospital and it took 18 months for her to walk. She suffers from scoliosis, high blood pressure and arthritis. Charleen believed she could earn money if she found something to do from home. She was not computer literate and had taken no computer classes. Charleen had worked as a sitter but could only perform those services for up to five hours at a time. She did not feel that she could find such a job because the pay would not cover fuel costs and because of pain. She also knew that she would be required to bathe, clean and cook and she was unable to perform such duties because of pain. Charleen admitted that she had not sought to obtain such employment.
Mary Burton, the biological daughter of Luther, and Charleen’s stepdaughter, also testified. She stated that Charleen had been living with her family since December of 2013, because she was displaced.
Burton and her husband “just assumed the responsibilities of groceries, electricity and | «house needs” for Charleen; she did not recall paying any of Charleen’s bills directly. Burton stated that there are four people in her family and that Charleen could stay with her long-term if “she absolutely needed to.”
Burton described her parents’ marriage relationship as “distant” with “emotional separation.” She testified that they did not communicate well. When questioned about why the marriage ended, Burton testified that her father told her “that he just couldn’t take it anymore.” She explained that her father “brought up some previous issues” relating to her brother’s death as part of the reason he left Char-leen. She stated that her brother at one time lived with Charleen and Luther. When he would not abide by rules set out for him to follow, she believed that it was Charleen who put him out of the house; she did not know if her father was present at the time. Burton stated that money had “always been tight” in her parents’ marriage and that they were a “payday-to-payday kind of a family.”
After considering this testimony, the trial court orally ruled as follows:
There is no question that based on the evidence presented that I think the mover has established freedom from fault within the meaning of the law relative to an award of spousal support. It does appear that the primary cause of the breakup of the marriage was Mr. Stowe having another relationship and leaving Ms. Stowe, - and I think that’s a superseding cause of the breakup of their marriage.
[[Image here]]
I also find that Ms. Stowe is really not capable, she is in fact disabled from being able to work. She is receiving Social Security Disability. This is not *644 an easy task to have the Social Security Administration determine one’s disability. That requires significant incapacity. And so it does appear to me that she is incapable of earning a living or supplementing her Social Security, which I understand has a net of $535.
19Based on the testimony I’ve heard, Mr. Stowe’s annual income was given to be $53,000. That amounts to $4,416 per month. There was not clear testimony as to what his net income was. It would be reasonable to estimate that his net income would be 75 percent of that figure, making his net income, an estimate, $3,312 per month, and a third of that being $1100 per month, plus or minus, $1104 a month. His net income may be greater or lesser than that, I don’t know. I am going to make an award, but it’s not going to go up to that figure so I don’t think that’s going to be a bar in this matter, but I think the Court would, in all likelihood, have authority to make an award up to that figure.
I have considered and listened to the testimony in this matter. It’s not altogether clear what is a reasonable figure. She has testified that she comes up short 380, 400 dollars per month, but that does not include housing expense, which would be from 200 to 500 dollars a month, plus utilities. That also does not exclude the cost of a automobile, automobile expenses, what have been made on that, as well as insurance on that. After considerable thought and considering the relative financial circumstances of the parties, I’m going to award the sum of $750 per month in spousal support. It will be retroactive in accordance with law.
The court also assessed Luther with costs and gave him credit for “any payments that he has made subsequent to the judicial demand,” excluding credit for car note and insurance payments for which he was entitled to reimbursement for half of that debt.
Luther’s assignments of error all state that “as a matter of law” the trial court’s critical determinations of Charleen’s fault, her need for spousal support and the amount of support were in error. Nevertheless, from the above review of the evidence, we view those determinations as resting primarily on the court’s choice of disputed issues of fact.
The trial court’s fact-choice concerning Luther’s infidelity is not clearly wrong. Luther never denied Charleen’s charge. Moreover, misconduct of a serious nature by Charleen was not shown by the evidence. [10The spouses’ difficulties and discord over their financial matters could be measured by the finder-of-fact in this case as falling below legal fault.
Charleen’s need for support begins with her lack of earning capacity at age 58 stemming from her disability. The trial court’s determination of her disability is supported by the evidence and not clearly wrong. Charleen was married for 25 years with her last employment 13 years before the end of the marriage. Her dependence upon Luther during those years of her disability is a factor supporting the award of support.
The $750/month support award is also supported by the evidence. Char-leen’s Social Security Disability income totals $6,420/year, an amount which obviously is insufficient for the basic necessities of life. The expenses which Charleen reported, including an expected charge for future rent, will be difficult for her to manage even with the amount awarded by the trial court.
Luther next cites La. R.S. 9:326(A) and the lack of documentation of the parties’ income and expenses. The statute addresses tax documents and other financial data. The local rule of the Third Judicial *645 District Court incorporates the statute’s objectives requiring a pretrial exchange of that data by the parties. See, Third Judicial District Court Rule 35.1. Nevertheless, if that discovery exchange was not followed in this case, Luther made no objection at the beginning of the hearing or as the evidence of the financial data was presented in the parties’ testimony.
Thus, in the absence of the parties’ production of supporting financial documentation, the trial court’s fixing of the support obligation from the | parties’ testimony was not in error. Starting with the issue of Luther’s ability to pay, the trial court accepted his testimony regarding his hourly wage and annual income. That evidence was sufficient, and the trial court’s ruling honored the requirement that the amount of the support award be less than one-third of Luther’s income.
As a final matter, we agree that issues concerning the future sale of the matrimonial domicile and Luther’s payments on the car note and insurance can become a matter for the settlement and partition of the community property. Likewise, concerning future circumstances, “an award of periodic support may be modified if the circumstances of either party materially change and shall be terminated if it has become unnecessary.” La. C.C. art. 114.

Conclusion

From our review of the record, the trial court’s determination of the facts concerning the financial status of the parties and Charleen’s necessitous circumstances was not manifestly erroneous. Therefore, the award of the support obligation is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.