NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-1048

CHARLES WAYNE TRAHAN

VERSUS

LEATRICE BREAUX TRAHAN

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2014-10388
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, James T. Genovese, Shannon J. Gremillion, Judges.

AFFIRMED.

Alex A. Lopresto III
Jeansonne & Remondet, LLC
P. O. Box 91530
Lafayette, LA 70509-1530
(337) 237-4370
COUNSEL FOR PLAINTIFF/APPELLEE:
       Charles Wayne Trahan

**Jack Derrick Miller**
**(A PROFESSIONAL CORPORATION)**
**Parker Reed Mitchell**
**415 North Parkerson Avenue**
**Crowley, LA 70527-1650**
**(337) 788-0768**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Leatrice Breaux Trahan**

**Pickett, Judge.**

Former wife appeals the trial court's denial of her claim for final periodic support. For the following reasons, we affirm.

## FACTS

After being married for forty-two years, Charles Trahan filed a petition for divorce from his wife Leatrice Breaux Trahan. Initially, Leatrice sought and was awarded interim spousal support. More than 180 days after filing his petition for divorce, Charles filed a Rule to Show Cause Why Divorce Should Not Be Granted. Leatrice then filed a Rule for Permanent Periodic Spousal Support. A judgment of divorce was granted on January 14, 2015.

On April 13, 2015, a hearing was held on Leatrice's Rule for Permanent Periodic Support. At the conclusion of the hearing, the trial court ruled that both parties were at fault in the demise of the marriage and denied Leatrice's request for final periodic support. Pursuant to a request by Leatrice's counsel, the trial court issued written reasons which state, in part:

> The testimony of both Charles and Leatrice Breaux revealed that there were several unresolved events going on in the marriage, and that it was a combination of those events that caused the breakup of the marriage. It was evident that neither Leatrice Trahan nor Charles Trahan desired to be with each other. Much testimony was given that indicated "the passion" was not there. The death of a child, and inability to deal with that loss, the social relationship between [Charles] and another woman, and the frequent times [sic] [Leatrice] devoted to caring for her mother, and for her grandchildren undoubtedly contributed to the demise of their marriage.
>
> . . . .
>
> The court did not find [Charles] guilty of adultery, as that was never proven. The court did not find that [Leatrice] abandoned her husband, without the intent to return, as that was not proven. As such, given that both have contributed to the demise of the marriage and need [to] responsibility for that demise, both parties are at fault in the

breakup of the marriage. Hence, [Leatrice]'s claim for interim [sic] spousal support is denied.

Leatrice appealed the trial court's judgment.

## ASSIGNMENT OF ERROR

On appeal, Leatrice assigns one error with the trial court's judgment:

> The trial court did not apply the proper legal principles and/or committed manifest error in determining that Appellant was at fault.

## DISCUSSION

In *Miller v. Miller*, 13-1043 (La.App. 3 Cir. 4/2/14), 161 So.3d 690, *writ denied*, 14-1607 (La. 10/31/14), 152 So.3d 154, this court outlined a three-tiered process for reviewing an award of final spousal support. The first two tiers of this process are pertinent to the issues presented by Leatrice's appeal. We begin our review by determining "whether the trial judge correctly applied the proper legal standard or standards." *Id.* at 697 (quoting *Davy v. Davy*, 469 So.2d 481, 482 (La.App. 3 Cir. 1985)). This determination involves issues of law; therefore, we only consider whether the trial court applied the correct legal standards giving no deference to the trial court's application of the law. *Miller*, 161 So.3d 690. Next, we review the trial court's findings of fact. Those findings of fact cannot be reversed unless they are found to be manifestly erroneous in light of the entire record. *Id.*

A party seeking final periodic support must prove that he or she was "free from fault prior to the filing of a proceeding to terminate the marriage[.]" La.Civ.Code art. 111. In this context, fault is "misconduct the [sic] rises to the level of one of the previously existing fault grounds for legal separation or divorce." La.Civ.Code art. 111, Revision Comments –1997 (c).

2

Before being repealed in 1990, former Article 138 provided the following grounds for separation of bed and board: (1) adultery; (2) conviction of a felony if sentenced to death or imprisonment at hard labor; (3) habitual intemperance, excesses, cruel treatment or outrages of one of the spouses toward the other, if these intemperances make living together unsupportable; (4) public defamation; (5) an attempt on the other spouse's life; (6) abandonment; (7) one spouse fleeing from justice when charged with a felony that one can prove the fleeing spouse was indeed guilty of committing; (8) intentional non-support of a spouse of the other spouse that is in destitute or necessitous circumstances; (9) when the spouses have lived separate and apart for six months with no reconciliation; and (10) when the spouses have lived separate and apart for six months and one spouse signs an affidavit indicating that the spouses have irreconcilable differences as to render their living together unsupportable and impossible.

Leatrice argues that she did not commit any of these offenses listed in Article 138; therefore, she was not at fault in the breakup of the marriage. This argument ignores the fact that Article 138 was repealed and no longer governs a determination of fault. The behavior outlined in Article 138 now serves only as a guide for gauging whether a party's behavior and/or actions during the marriage constitute fault.

Recently, in *Stowe v. Stowe*, 49,596, p. 2 (La.App. 2 Cir. 3/4/15), 162 So.3d 638, 640 (citations omitted), the second circuit detailed the concept of fault for purposes of final periodic support, stating:

> The word fault contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties and responsibilities. A spouse is not deprived of spousal support after divorce simply because he or she was not totally blameless in the marital discord. Only misconduct of a serious nature,

> providing an independent contributory or proximate cause of the breakup, equates to legal fault. Legal fault includes, but is not limited to, habitual intemperance or excesses, cruel treatment or outrages and abandonment. Mere bickering and fussing do not constitute cruel treatment for purposes of determining alimony.

.

This court succinctly explained the concept of freedom of fault in *Terry v. Terry*, 06-1406, p. 5 (La.App. 3 Cir. 3/28/07), 954 So.2d 790, 794 as: "For a spouse to be free from fault, that spouse must not have had any misconduct of a serious nature that is an independent, contributory or proximate cause of the failure of the marriage. *Kendrick v Kendrick*, 236 La. 34, 106 So.2d 707 (1958)."

The trial court noted and the record evidences that the death of the Trahan's daughter in 1999 had a serious impact on their marriage. Both parties received counseling to deal with their grief. Charles testified that he supported Leatrice in her struggle with grief, but she did not reciprocate his support to her. Then, in 2005, Leatrice's mother had a stroke. Pursuant to an agreement among Leatrice and her four sisters, each sister was to care for their mother one week at a time. Because Charles and Leatrice lived in Rayne and her mother lived in Iowa, Leatrice would stay in Iowa a week at a time to care for her mother. She would also agree, however, to remain additional time during other sisters' designated weeks. Leatrice admitted that this was not out of necessity but because she wanted to take care of her mother. During a portion of that time and thereafter, Leatrice also would travel to Moss Bluff to care for their granddaughter for days at a time. Charles testified there were times when she was gone for as much three weeks at a time. After Leatrice's mother died in 2010 and their granddaughter started daycare at age three, another grandchild was born, and Leatrice continued regularly traveling to Moss Bluff to care for their second grandchild for days at a time.

4

Charles testified that he did not object to Leatrice helping with care for her mother and/or for their grandchildren's care when needed but explained that he objected to her volunteering to stay away from home when others were available to assist in providing that care. Charles's suggestions or requests to Leatrice that she could reduce her time away from home were ignored, and Leatrice continued to absent herself from their home. Leatrice admitted that although Charles asked why she had to stay with their grandchildren so often when they could go to daycare, she did so because she wanted to be with them and take care of them.

As Charles testified, Leatrice put others before him. Her testimony establishes that her absences from home often were not out of necessity, but her preference, indicating she preferred to be away from her home and her husband. The evidence also establishes that when Leatrice was home, she did not provide Charles the emotional support he sought from her. The parties' testimony indicates that Leatrice "went through the motions" of providing emotional support by telling Charles that she loved him if he gave her flowers, by cooking him meals, and by cleaning their home, but she did not connect with him emotionally.

At times, Charles described the effect Leatrice's behavior had on their marriage as "no passion." He clarified that his use of the term "passion" did not relate to sexual intimacy, but to "the affection two people have for being together, helping each other out, having their back when they have problems. I felt I was the one giving support and not getting it." Charles testified, and Leatrice confirmed, that he asked her to be more affectionate. Leatrice testified that she told Charles she loved him, she cooked for him, and she cleaned for him and explained that she tried to be more affectionate. Charles related, however, that "Actions speak louder

5

than words." He described their living together as that of roommates, not husband and wife.

*Stowe*, 162 So.3d at 640, explains that "fault contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties and responsibilities" and that "[o]nly misconduct of a serious nature, providing an independent contributory or proximate cause of the breakup, equates to legal fault." Our review reveals the trial court did not err in applying the appropriate legal standard or in its findings of fact.

By her own admission, though explained in different terms, Leatrice preferred to be away from Charles and their home. Charles testified that due to Leatrice's extended absences from home they essentially lived apart for five years. The record establishes that Leatrice's voluntary, unnecessary absences from home on the pretext of caring for her mother and grandchildren over an extended period of five or more years and her inability or refusal to provide Charles emotional support were violative of her marital duties as a wife and a proximate cause of the breakup of the marriage. Although Leatrice presented evidence that Charles began texting another woman, the evidence shows that the texting did not begin until a year or so before Charles filed for divorce in 2014. The trial court found the relationship with the woman to be social. Nothing in the record controverts this finding. Accordingly, we find no error with the trial court's conclusion that Leatrice was at fault in the breakup of her and Charles's marriage.

**DISPOSITION**

The judgment of the trial court is affirmed.  Costs are assessed to Leatrice Breaux Trahan.

**AFFIRMED.**