BROWN, Chief Judge.
11 Defendant, Charles Elbert Brown, filed the instant appeal from the June 23, 2015, judgment which ordered him to pay to Catherine Brown interim periodic support of $3,000 per month for a period of approximately eight months and permanent periodic support of $2,000 per month thereafter.[1] He also appealed from an order signed by the trial court on October 12, 2015, on a rule for contempt which ordered him to pay $12,500 to Catherine Brown and $14,000 to her counsel of record and to remain current on any additional spousal support obligations.[2]
For the reasons set forth below, we affirm.[3]

Facts and Procedural History

Charles and Catherine Brown were married in Hot Springs, Arkansas, on October 28, 2005. Catherine filed a petition for divorce pursuant to La, C.C. art, 102 on July 23, 2014, alleging that the parties had separated on July 6, 2014, she was in need and free from fault in the breakup of the marriage, Charles had the ability to pay, and she was entitled to awards of interim and final periodic spousal support.[4] On July 31, 2014, Charles filed an answer, disputing Catherine’s entitlement to either interim or final periodic spousal support as well as his ability to pay.
On January 29, 2016, Charles filed a rule to show cause alleging that the parties had lived apart, they had not reconciled more than 180 days prior to the filing of the rule, and he was entitled to a judgment of divorce. On February 9, 2015, Catherine filed a rule for contempt alleging that Charles had failed to pay the court-ordered $3,000 per month in interim spousal support, had not produced the financial documents as ordered by the court, and had violated the order by withdrawing money from a joint account. A hearing was set for March 2, 2015. On that date, the parties were granted a judgment of divorce, Charles was given several days to pay the amount he owed for spousal support, and the rule for contempt was reset for April 2, 2015.
Catherine filed an affidavit of income and expenses into the record. On April 2, 2015, the spousal support hearing was held. On June 23, 2015, the trial court rendered judgment awarding Catherine interim periodic support in the amount of $3,000 per month from July 23, 2014, the date the divorce petition was filed, until April 2, 2015, and thereafter, final periodic support in the amount of $2,000 per month.
*891 Charles’s motion for new trial was denied. Catherine filed a rule for contempt to make arrearages executory and for other relief, alleging that Charles owed her $15,000 in past due interim spousal support. Following a hearing, the trial court ordered Charles to pay Catherine $12,250, and her attorney $14,000, on or before November 2, 2015.

Discussion

Charles contends that the trial court erred in finding that Catherine was entitled to interim periodic support based upon the net worth of her separate estate, her inflated expenses and his inability to pay. . Charles also argues that.the trial court’s award of final periodic support was erroneous because Catherine was at-fault in the dissolution of the parties’ marriage.
The trial court’s ' determination that Catherine was entitled to awards of interim and final periodic support involved a consideration of the parties’ underlying income and expenses. We will first acknowledge the difficulty faced by the trial court in ascertaining a clear picture of the parties’ relative financial positions. Both parties testified, as did Charles’s son Jason, a former employee of Charles’s business, and Charles’s banker, a partner with Charles in several business enterprises. The testimony was conflicting and much was unsubstantiated. As noted by the trial judge in his written reasons for judgment:
The evidence did indicate that [Catherine Brown] has her own house, has a rental house in Clay, Louisiana, rentals from storage units (without an accounting for amounts she actually receives). The Court further finds that [her] affidavit of expenses [was] somewhat inflated.
However, as to Mr. Brown, his accounting of his income is incomplete. Without this Court receiving the documents that were requested at the time of the hearing, and from his own testimony and from the documents that were presented, it showed that he voluntarily shut down his business because he was tired of working, even'though the-business grossed over $750,000 the prior year.
As held by this Court in Stowe v. Stowe, 49,596 (La.App.2d Cir.03/04/15), 162 So.3d 638, testimony of the parties, in the absence of their production of supporting financial documentation, is sufficient support for the trial court’s fixing'of the support obligation. Keeping this in mind, we will examine the issues raised' by Charles Brown in his appeal.

Interim Periodic Support

In a proceeding for divorce, the court may award interim periodic support to a spouse based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. arts. 111, 113; Hogan v. Hogan, 49,979 (La.App.2d Cir.09/30/15), 178 So.3d 1013, writ denied, 15-2018 (La.01/08/16), 182 So.3d 953; Evans v. Evans, 49,160 (La.App.2d Cir.06/25/14), 145 So.3d 1093; Bickham v. Bickham, 46,264 (La.App.2d Cir.03/02/11), 58 So.3d 950.
The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be made and until a period of time of adjustment elapses that does not exceed, as a general rule, 180 days after the judgment of divorce. Evans, supra; Gremillion v. Gremillion, 39,588 (La.App.2d Cir.04/06/05), 900 So.2d 262. A spouse’s right to claim interim periodic support is grounded in the statutorily imposed duty on spouses to support each other during marriage and thus provides for the spouse who does not have sufficient income for his *892 or her maintenance during the period of separation. McAlpine v. McAlpine, 94-1594 (La.09/05/96), 679 So.2d 85; Hogan, supra; Evans, supra; Brown v. Brown, 44,989 (La.App.2d Cir.01/27/10), 31 So.3d 532. The needs of the claimant spouse have been defined as the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the payor spouse's ability to pay. Amos v. Amos, 47,917 (La.App.2d Cir.02/27/13), 110 So.3d 1243; Hogan, supra; Bickham, supra.
In order to demonstrate need for interim support, the claimant spouse has the burden of proving that he or she lacks sufficient income to maintain the standard of living he or she enjoyed during the marriage. Hogan, supra; Evans, supra; Brown, supra. Once the claimant spouse has established need, the court must examine the ability of the payor spouse to provide support. Evans, supra; Amos, supra; Bickham, supra. The trial court is vested with much discretion in determining an award of interim spousal support. Such a determination will not be disturbed absent a clear abuse of discretion, which will not be found if the record supports the trial court’s conclusions about the needs of the claimant spouse or the means of the payor spouse and his or her ability to pay. Hogan, supra; Shirley v. Shirley, 48,635 (La.App.2d Cir.10/16/13), 127 So.3d 935; Bickham, supra.
Catherine testified that she has several pieces of immovable property that are her separate property, including the parties’ matrimonial domicile, and a farm in Dodson, Louisiana; however, the evidence does not show that she was receiving or had ever realized any significant or consistent revenue from them. At the time of the trial, she had rented out a house she owned in Clay, Louisiana, and was receiving rental income of $500 per month. Catherine also testified that for several years of the parties’ marriage, she was paid $2,250 per month as part of the community property settlement from her first marriage. However, the payments ended prior to the dissolution of her marriage to Charles. Catherine testified that the storage business in which she has an interest makes enough revenue for the business to “break even,” and the condominium she co-owns with her daughter and son-in-law in Hot Springs, Arkansas, is not profitable.
Catherine, who is in her early sixties, stated that she does not have any significant work experience or history, nor is she qualified for any lucrative employment opportunities. Catherine testified that she does not have the ability to earn enough money to maintain the standard of living she enjoyed during the parties’ marriage. At the time of trial, Catherine was working part-time making $9.00 an hour. Catherine testified at length regarding the expenses she had, particularly those that Charles gave her money to pay for and those that were paid directly by his company. According to the affidavit of income and expenses she filed, her monthly expenses ranged from $8,240.49 to $9,015.49, depending on which insurance premium was included in the calculation.
On the other hand, Charles did not provide any documentation to support his claim that he was unable to pay interim support. As noted by the trial court, Charles refused to comply with all discovery requests for his financial records, and on the day of the trial, his attorney stated that they wanted to proceed rather than request a continuance to obtain records they claimed had not been produced by third-party financial institutions. The records sought were copies of bank statements purporting to show income received *893 by Catherine. Charles’s business, Brown’s Garage and Trucking, generated revenue of approximately $858,000 in 2011, $700,000 in 2012,, and $756,000 in 2013. After Charles purportedly shut down the business, it nonetheless continued to pay all of his expenses. He was evasive at trial and gave contradictory testimony regarding the reason he shut down his company. He stated during his deposition that it was because he was “just tired of working.” At trial, he stated that he shut down because he had lost the majority of his clients and it was no longer profitable to run.[5] He further testified that he was totally in debt. The trial court had no way to determine Charles’s true financial condition in light of his failure.or refusal to produce financial documentation and his voluntary unemployment.
Considering the above testimony and evidence, the trial court awarded Catherine interim periodic support of $3,000. per month. We find no abuse of the trial court’s discretion in this case.

Final Periodic Support

A spouse may be awarded final periodic support when he or she is in need of support and is free from fault prior to the filing of a petition for divorce, based on the needs of that party and the ability of the other party to pay. La. C.C. arts. 111, 112(A). Fault is a threshold issue in a claim for spousal support. Hunter v. Hunter, 44,703 (La.App.2d Cir.09/30/09), 21 So.3d 1032. A spouse seeking final spousal support must be without fault and the burden of proof is on the claimant. King v. King, 48,881 (La.App.2d Cir.02/26/14), 136 So.3d 941; Adkins v. Adkins, 42,076 (La.App.2d Cir.04/11/07), 954 So.2d 920.
A spouse seeking support need not be perfect to be free from legal fault. The word “fault” contemplates conduct or substantial acts of commission or omission by a spouse that violates his or her marital duties and responsibilities. Only misconduct of a serious nature, providing an ^independent, contributory or proximate cause of the breakup, equates to legal fault. Pearce v. Pearce, 348 So.2d 75 (La.1977); Stowe, supra; King, supra; Hunter, supra. Legal fault includes, but is not limited to, habitual intemperance or excesses, cruel treatment or outrages and abandonment. Id., supra; Van Martin v. Martin, 45,007 (La.App.2d Cir.03/03/10), 32 So.3d 319; Hunter, supra. To prove cruel treatment, a party needs to show a continued pattern of mental harassment, nagging, and griping by one spouse directed at the other so as to make the marriage insupportable. Gilley v. Gilley, 07-568 (La.App. 5th Cir.12/11/07), 976 So.2d 727. Mere bickering and fussing do not constitute cruel treatment for purposes of denying alimony. King, supra; Hunter, supra.
The claimant spouse does not need to prove “necessitous circumstances.” Anderson v. Anderson, 48,027 (La.App.2d Cir.05/15/13), 117 So.3d 208; King, supra; Jones v. Jones, 35,502 (La.App.2d Cir.12/05/01), 804 So.2d 161. Final periodic support, formerly known as “permanent alimony,” is limited to an amount sufficient for maintenance as opposed to continuing an accustomed style of living. Anderson, supra. The trial court has great discretion in awarding final periodic support to a party not at fault. Ducote v. Ducote, 339 So.2d 835 (La.1976); Richards v. Richards, 49,260 (La.App.2d Cir.08/13/14), 147 So.3d 800; Anderson, supra.
According to Charles, Catherine’s fault in making plans to end the marriage prior to her filing of her petition for divorce should preclude an award of final *894 periodic support. Wbat Charles is referring to is her execution and filing (in the conveyance records of five parishes) of a Reservation of Fruits and Revenues of Separate Property less than a month after their marriage, as well as the transfer of a large sum of money from a community account to a separate account which she shared with her daughter. He also claims that the couple fought over her attempts to preserve her immovable separate property.
There is no evidence that Catherine’s alleged misconduct or financial transactions constituted an independent, contributory or primary cause of the Browns’ breakup. See Hunter, supra. In fact, Charles testified that he only learned of the reservation of fruits and revenues when he was served with Catherine’s divorce petition and the complained of financial transactions after the parties separated. While both parties stated that they argued frequently about financial issues, particularly those in which their grown children were involved, it was Charles who abandoned the marital home without giving a reason to his spouse. We find no error in- the trial court’s determination that Catherine met her burden of proving her freedom from fault in the dissolution of the marriage. Hunter, supra; see Henry v. Henry, 08-692 (La.App. 3d Cir.12/10/08), 999 So.2d 255.
We likewise find no error in the trial court’s determination that Catherine established her need. At the time of their divorce, Catherine, who was in her early sixties and had no significant work history, was working part-time making $9.00 an hour. ' She had rental income from a home she owned of $500 per month. Prior to the couple’s breakup, Charles had been paying most of her expenses.
As for the trial court’s calculation of the amount it awarded in final periodic alimony, $2,000 per month, this involved consideration of both parties’ income and expenses. As noted above, the trial court recognized that Catherine’s maintenance expenses as listed in her affidavit were inflated. Thus, the trial court took that into consideration when it awarded Catherine an amount significantly less than the amount of her expenses. The trial court further observed that Charles’s business had realized gross revenue of approximately $750,000 in the previous year. Charles did not file an affidavit of income or expenses, nor did he present a current income tax return for his business or provide any other' financial'records. Instead, he testified that he voluntarily closed his business. Charles further stated that he was living in a travel trailer at his shop, and that his bills were being paid by his former business “until the money runs out.” According to him, his only income was $1,000 per month in social security and $100 a week from the shop so he could keep his insurance. The court was forced to make credibility determinations and rely upon the three previous tax returns Charles did produce, which showed gross income for his business ranging from $700,000 to $853,000. The trial court considered the nature of the evidence, the relevant factors in accordance with La. C.C. art. 112, and determined that Catherine was entitled to an award of $2,000 per month. We find no abuse of the trial court’s discretion in its award to Catherine in this case.[6]
Charles’s appeal from the trial court’s October 12, 2015, order is based on his argument that he should not have been *895 ordered by the trial judge to bring up to date his interim periodic support payments, pay Catherine’s attorney fees associated with the filing of several rules for contempt for Charles’s failure to pay his interim support payments, or to keep his interim and final periodic support payments current because the trial court erred in awarding these support payments in the first place. As found by this Court in Hogan, 178 So.3d at 1027, a certain amount of financial gamesmanship and withholding of support is sadly typical in some domestic cases. Charles should have begun making the support payments in a timely fashion from the very first order. These payments were to have been continued through the course of this appeal, in accordance with La. C.C.P. art. 3493, which provides that an appeal from a judgment relating to custody, visitation or support of a person does not suspend execution of the judgment.

Conclusion

For the reasons set forth above, the trial court’s judgment and' order are AFFIRMED. Costs are assessed to defendant, Charles Elbert Brown.

. This judgment was rendered on June 23, 2015, but was signed on July 27, 2015, and filed into the record on July 30, 2015.

. This order was rendered in open court on September 17, 2015, but was signed on October 12, 2015, and filed into the record on October 15, 2015.

. After the instant judgment was rendered, Charles filed a rule to terminate final periodic spousal support, alleging that Catherine had sold her home for $200,000 and was receiving additional income from other sources; the issues raised by this rule, which was filed after the appeal, are not before this Court.

. Catherine also requested the use of the matrimonial home, which was her separate property, use of a 2010 Chevy Traverse, and a restraining order prohibiting Charles from alienating, selling, donating or encumbering community property. An order was issued granting Catherine use of the home and vehicle and the requested TRO was granted as well.

. He testified that he lost Rock Tenn, which represented 80-90% of his trucking business.

. As noted above, Charles filed a motion to terminate permanent periodic support pursuant to La. C.C. art. 114 on September 28, 2015'. Further, we note that neither party offered evidence of the liquidity of their assets.