MOORE, J.
*582 Angela Welch appeals a judgment that denied her claims for interim and final spousal support. For the reasons expressed, we affirm.
FACTUAL BACKGROUND
The Parties' Pleadings
According to Angela's petition, she and the defendant, Norman Welch, got married on September 14, 2012, in Shreveport; they had no children together; they established a marital home on Bert Kouns, in the Summer Grove area of Shreveport; and Norman left that home on December 16, 2015.
Angela filed this petition for Art. 102 divorce on April 12, 2016. She demanded interim and final spousal support. In an income-and-expense affidavit filed in August 2016, she claimed she was drawing unemployment benefits ("UI") of $660 a month and earning about $800 a month cleaning people's houses; she claimed monthly expenses of $2,311. Notably, her expenses included rent or house note of $1,000, auto insurance of $150, and utilities (gas, water, electric) of $312.
Three months later, Norman filed his income-and-expense affidavit, claiming income of $2,150 a month (in brief, he asserts this was actually a bimonthly amount), less withholdings and deductions of $1,516, leaving him only about $258 net. He claimed monthly expenses of $7,189, creating a monthly deficit of $6,930. Notably, his expenses also included a house note of $1,400 and utilities of $370, both for the house on Bert Kouns, and auto insurance of $350, covering the car Angela was driving.
Shortly before the hearing, Angela filed an amended affidavit that her housecleaning income had dropped to $200-$400 a month, so her total income was now a mere $860-$1,060.
Trial Testimony
At the hearing on final divorce and spousal support, December 5, 2015, the district court granted the parties' Art. 102 divorce and reserved their rights to partition any community property. The court also addressed various discovery matters. Both parties testified that this was their second time to be married to each other.[1]
Angela testified that they got remarried because Norman told her he wanted to get back together; during their marriage, Norman worked and paid all the bills, and was "happy" for her to stay home. She admitted that her two adult sons of a prior marriage, ages 34 and 27, were living with her at the house on Bert Kouns. However, she insisted this was not why Norman "wouldn't live there," and, in fact, he usually drove them to work with him at International Paper (where they were all employed). She also admitted that most of the time, her sons were not contributing to household expenses.
She also admitted that as a result of a fall, she was treated by a Dr. Boyd, in Shreveport, who gave her Tramadol, which she insisted was not a narcotic,[2] and that *583 she then went to a pain-management doctor in Center, Texas, Dr. Florencio Singson, who was giving her Lortab, also an opioid. She agreed that Dr. Singson advertises himself as an "addiction doctor," but maintained that he was also a general practitioner. She denied ever being treated for opiate addiction or having any problems with opiates.
Norman testified that he had never actually lived in the marital home on Bert Kouns. He had intended to, and had placed some clothes and belongings there, but he would not move into a house with two grown men: "You cannot have grown men in the house and live together. It does not work." He admitted knowing about Angela's sons before they remarried, but he "figured" they would move out if he moved in; he considered this a "condition" of their remarriage, and it did not happen. The sons were there "24-7," as he put it. He added that he was renting that house to own, and had always paid the rent, utilities, and Angela's car insurance, but he could not afford to continue. He quit paying water and electricity in February 2016, leading DOWAS and AEP Swepco to disconnect the services.
Norman also testified that Angela had "always had an issue" with Lortab, the situation being at times "intolerable." Although she had legitimately injured her neck, he felt she was taking much more medication than was needed for the pain, and he knew (from an Internet search) that Dr. Singson is an "addiction doctor." On cross-examination, he admitted smoking marijuana occasionally and giving Angela money to buy Lortab, "off the street" at times. He summarized that Angela's addiction and two grown sons living at the house were the source of the marital problems.
One of Angela's sons, 34-year-old John, confirmed that he had lived in the house on Bert Kouns ever since Norman leased it; that Norman paid the electric and water bills in the house; but these utilities were cut off in the "early summer," after which he (John) and Angela had to put down new deposits to get them restored.
ACTION OF THE TRIAL COURT
The court ruled from the bench that Angela was not free from fault. The court cited the "issue with pain, prescription medication" and that an adult child living in the home "would have been reason for the parties to have argued and for him [Norman] not to have returned home."
As to interim support, the court found that the parties' affidavits did not show that Angela needed it: disallowing the rent and utilities that she claimed as expenses, but that Norman had actually been paying, Angela made enough to cover her expenses. Further, Norman paid these bills from December 2015 through June 2016, thus satisfying his obligation of interim support. Nevertheless, the court ordered Norman to make a one-time payment of $500, to reimburse the utility deposits.
The court rendered judgment denying interim and final support on December 16, 2016. Angela took this devolutive appeal, raising two assignments of error.
DISCUSSION
Interim Support
By her first assignment of error, Angela urges the court erred in denying her request for interim spousal support. She shows that such support is based on the "needs of the party, the ability of the other party to pay, and the standard of living of the parties during the marriage,"
*584 La. C.C. art. 113, and that each party must file appropriate documentation of past and current income, La. R.S. 9:326 A. As to the parties' prior standard of living, she contends that during their marriage, she did not regularly work outside the home, and Norman preferred it that way. As to her needs, she argues that since July 2016, she has been drawing UI of $660 a month; work cleaning a lady's house for $200 a week was cut to only once or twice a month, thus reducing her total income to $860-$1,060 a month. As to Norman's ability to pay, she argues that he makes a handsome living as an HVAC technician and admitted earning twice as much as the $2,150 listed in his affidavit; in fact, she projects he must earn at least $51,600 a year, and perhaps as much as $100,000 a year, considering his claimed expenses of $7,189 a month. She concludes the court erred in denying interim support "when it is evident" that she is in need and Norman has the means to pay.
Interim spousal support is regulated by La. C.C. art. 113, which provides, in pertinent part:
A. Upon motion of a party or when a demand for final spousal support is pending, the court may award a party an interim spousal support allowance based on the needs of that party, the ability of the other party to pay, any interim allowance or child support obligation, and the standard of living of the parties during the marriage, which award of interim spousal support allowance shall terminate upon the rendition of a judgment of divorce.
B. If a claim for final spousal support is pending at the time of the rendition of the judgment of divorce, the interim spousal support award shall thereafter terminate upon rendition of a judgment awarding or denying final spousal support or [180] days from the rendition of judgment of divorce, whichever occurs first. The obligation to pay interim spousal support may extend beyond [180] days from the rendition of judgment of divorce, but only for good cause shown.
The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be made and until a period of adjustment elapses that does not exceed, as a general rule, 180 days after the judgment of divorce. Brown v. Brown , 50,833 (La. App. 2 Cir. 8/10/16), 200 So.3d 887. The needs of the claimant spouse have been defined as the total amount sufficient to maintain her in a standard of living comparable to what she enjoyed prior to the separation, limited only by the paying spouse's ability to pay. Amos v. Amos , 47,917 (La. App. 2 Cir. 2/27/13), 110 So.3d 1243. The trial court is vested with much discretion in determining an award of interim spousal support. Brown v. Brown , supra . This court has considered payment of the wife's house note and utilities as satisfying the "standard of living" requirement of Art. 113. Reed v. Reed , 50,191 (La. App. 2 Cir. 11/18/15), 182 So.3d 219.
The record easily establishes that Angela had a monthly income of between $860 and $1,060, and expenses (after disallowing expenses actually paid by Norman) of $849. Although the margin is admittedly slim, we cannot say the district court abused its discretion in finding that Angela had income sufficient to cover her valid expenses. The record also establishes that Norman paid Angela's house note, utilities, and car insurance for seven months after their physical separation. The district court could well consider this as discharging Norman's Art. 113 obligation.
*585 Reed v. Reed , supra. As Norman had never even lived in the house and Angela's sons were getting the use of it, seven months was a reasonable period of adjustment. On this record, we perceive no abuse of discretion. This assignment lacks merit.
Final Support
By her second assignment of error, Angela urges the court erred in denying her request for final periodic support. She cites the requirement that the spouse be free of fault, La. C.C. art. 111, and the factors affecting the amount of support, La. C.C. art. 112 C. She contends that the court assigned "fault equally to both parties," and argues that her fault-use of prescription drugs and the "decisions" of her adult children-were not serious enough to provide an independent, contributory or proximate cause of the breakup, Gremillion v. Gremillion , 39,588 (La. App. 2 Cir. 4/6/05), 900 So.2d 262. She submits that the only conduct of a serious nature, forming an independent and actual cause of the breakup, was Norman's refusal to live with his wife. She asks this court to reverse and to fix final support.
In a proceeding for divorce or thereafter, the court may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage. La. C.C. art. 111 ; Rhymes v. Rhymes , 2013-0823 (La. 10/15/13), 125 So.3d 377, 299 Ed. Law Rep. 346. A spouse seeking support need not be perfect to be free from legal fault. "Fault" contemplates conduct or substantial acts of commission or omission by a spouse that violates his or her marital duties and responsibilities. Only misconduct of a serious nature, providing an independent, contributory or proximate cause of the breakup, will constitute legal fault. Pearce v. Pearce , 348 So.2d 75 (La. 1977) ; Brown v. Brown , supra . The trial court has vast discretion in determining entitlement to final periodic support; a finding of fact on the issue of fault will not be disturbed unless it is manifestly erroneous or clearly wrong. King v. King , 48,881 (La. App. 2 Cir. 2/26/14), 136 So.3d 941, and citations therein.
The district court faced the basic task of resolving conflicting testimony. Norman testified that having Angela's adult sons from a prior marriage move out was a condition of remarrying her, as living with two other grown men in the house was not sustainable; she failed to get them to leave. Angela testified, on the other hand, that Norman never said anything about getting the boys to leave. She felt that their continued presence in the house was not the reason why Norman refused to move in, but she offered no other reason. She felt Norman and her sons got along well, as Norman drove them to work at IP; however, a rational fact finder could conclude that this was mostly Norman's attempt to make Josh and John more independent and likely to find their own place. On this record, we cannot say the district court abused its discretion in accepting Norman's version of the parties' agreement and frustrated home life.
We recognize that a course of conduct, such as drinking, when it is approved and consented to by both spouses, cannot constitute mutual fault. Jenkins v. Jenkins , 38,873 (La. App. 2 Cir. 9/22/04), 882 So.2d 705, and citations therein. The testimony shows that Angela sustained a neck injury and used prescription opioids, and that Norman had given her money to buy Lortab"off the street." However, Norman felt that she was taking much more medicine than necessary, the situation was at times intolerable, and he criticized her going to Center, Texas, to see an "addiction doctor." Angela, by contrast, seemed oblivious that she had a problem, and even insisted *586 (incorrectly) that Tramadol was not a narcotic. On this record, the district court could reasonably find that Norman did not condone Angela's continued drug use, and that her conduct was an independent, contributory and proximate cause of the breakup. We perceive no manifest error in the court's finding that Angela was not free from fault as required for final periodic support under Art. 111. This assignment lacks merit.
CONCLUSION
For the reasons expressed, the judgment is supported by the record. The judgment is therefore affirmed, with Angela M. Welch to pay all costs.
AFFIRMED .

This court notes that the legal fault of a spouse prior to reconciliation cannot be the basis for denying that spouse final periodic support. La. C.C. art. 104 ; Shirley v. Shirley , 48,635 (La. App. 2 Cir. 10/16/13), 127 So.3d 935.

Tramadol is, in fact, designated as a Schedule IV narcotic drug, La. R.S. 40:964, Sched. IV, A(3), and is considered an "atypical opioid," La. Adm. C. 40:I, § 2311 G(7)(k).