Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,391-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

GREGORY RASBURY                         Plaintiff-Appellee

versus

AMBER NICHOLE RASBURY                   Defendant-Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 80,878

Honorable Parker Self, Judge

* * * * *

THE GIPSON LAW OFFICE, LLC              Counsel for Appellant
By: F. Pearlette Gipson

RYAN GATTI LAW FIRM                     Counsel for Appellee
By: P. Nelson Smith, Jr.

* * * * *

Before PITMAN, STONE, and HUNTER, JJ.

**PITMAN, C. J.**

Amber Nichole Rasbury appeals the judgment of the trial court which found that she was not entitled to permanent spousal support from her former husband, Gregory Rasbury, and that named Gregory as the domiciliary parent in the shared custody arrangement of the two children of the marriage. For the following reasons, the judgment of the trial court is affirmed.

## FACTS

The Rasburys married on April 30, 2011, and had two children, S.R. and K.R. In August 2023, Gregory filed a petition for an uncontested divorce and requested shared custody of the minor children, S.R. and K.R., ages 14 and 12 years, respectively. Amber answered and responded as a plaintiff in reconvention, seeking a divorce based on Gregory's abandonment of the home. She also sought joint custody and requested that she be made the domiciliary parent. A temporary custody order was entered for joint custody of the children and for interim support for Amber, who was named as the domiciliary parent. In May 2023, the trial court signed a second interim order granting shared custody, one week alternating with each parent, and stating that the issue of domiciliary parent would be decided at the trial.[1]

After a hearing on December 5, 2023, the trial court appointed Robin Miley in Natchitoches Parish as custody evaluation expert. Amber eventually hired Rick Martin, a minister and licensed professional counselor,

_____

[1] At some point, Amber began being known as Amber Shockley in portions of the record, and it was noted that she never assumed the Rasbury name; however, for purposes of this opinion, she will be referred to as Amber Rasbury.

to render an opinion on the mental health of the children he had been counseling. A final decree of divorce was rendered in April 2024.

The trial on permanent spousal support and custody was set for August 29, 2024. It began, but a 56-day recess was taken until October 24, 2024. At trial, Gregory testified that Amber caused the breakup of their marriage as a result of arguing and fighting, her refusal to stop smoking marijuana even though he begged her to do so and her admission of an extramarital affair. Gregory also claimed Amber sent nude photographs of herself to the person with whom she was having an affair, which were date-stamped during their marriage.

Amber testified that she had suspected Gregory of infidelity with one of his coworkers, Brittany Downs, after she discovered emails exchanged between them during the marriage. Downs went to Amber's place of work and confronted her while the parties were still married, and she also testified that she was in a relationship with Gregory at the time of the trial. Amber denied that the nude photographs of her that Gregory had produced had been sent to a person with whom she was allegedly engaged in an affair and stated that she had sent them to Gregory during the marriage.

The custody evaluator, Miley, testified that neither party was successful with co-parenting, that one's parenting style was too authoritative and the other's was too permissive. Together they were somewhat successful in parenting, but apart from each other, they were not. Her report stated that the children are "out of control." She concluded her report with the recommendation that custody should be shared equally and that Gregory should be the domiciliary parent because he showed some insight as to his

parenting weaknesses while Amber did not seem to realize the danger of her passive parenting.

Amber's own mental health professional, who was not testifying regarding custody but only the mental health status of Amber and the children, testified that they had all experienced trauma earlier in life. He testified that the repercussions of Amber's traumas continued to affect her adult life and her ability to parent and these included Post Traumatic Stress Disorder, severe anxiety and major depression.

At the close of trial that day, the trial court thoroughly discussed the evidence that had been presented, noted that it had been able to speak to both children privately and had considered all factors of La. C.C. art. 134. After going into great detail in its reasons for judgment, it found both parties at fault in the breakup of the marriage, denied Amber's claim for permanent spousal support and made Gregory domiciliary parent in a shared custody arrangement. The final judgment was signed on January 27, 2025, denying permanent spousal support, instituting shared custody of a week on and a week off and naming Gregory as the domiciliary parent.

Amber appeals the judgment of the trial court.

### DISCUSSION

*Denial of permanent spousal support*

Amber contends the trial court erred in finding that she did not carry her burden of proving that she was free from fault in the breakup of the marriage. She argues that to meet her burden, she had to prove she did not commit misconduct that was an independent, contributory or proximate cause of the failure of the marriage. She argues that the spouse seeking support does not have to be totally blameless in the marital discord, but the

3

misconduct must be of a serious nature that equates to legal fault, i.e., adultery, conviction of a felony, habitual intemperance, cruel treatment or abandonment. She argues that she did not commit any of these acts of misconduct and that the factors to be considered by a court in making a determination of spousal support dictate that she should be entitled to the permanent support she requests.

Gregory argues the trial court had more than adequate evidence upon which to base its decision that both parties were at fault in the dissolution of the marriage. He contends that Miley's report detailed Amber's problems leading to the marital discord that still affect her ability to properly parent. For these reasons, he contends that the trial court did not err in finding that she was at fault in the breakup of their marriage and that she was, therefore, not entitled to permanent support.

In a proceeding for divorce or thereafter, the court may award final periodic support to a party based on the needs of that party and the ability of the other party to pay and who is free from fault prior to the filing of a proceeding to terminate the marriage. La. C.C. art. 111; La. C.C. art. 112(A); *West v. West*, 51,692 (La. App. 2 Cir. 11/15/17), 245 So. 3d 269. The court shall consider all relevant factors in determining the amount and duration of final support. La. C.C. art. 112(B). Fault is a threshold issue in a claim for spousal support. *Brown v. Brown*, 50,833 (La. App. 2 Cir. 8/10/16), 200 So. 3d 887. A spouse seeking final spousal support must be without fault and the burden of proof is on the claimant. *Id.*

The word fault contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties and responsibilities. *Stowe v. Stowe*, 49,596 (La. App. 2 Cir. 3/4/15),

4

162 So. 3d 638. A spouse is not deprived of spousal support after divorce simply because he or she was not totally blameless in the marital discord. *Id*. Only misconduct of a serious nature, providing an independent contributory or proximate cause of the breakup, equates to legal fault. *Id*. Legal fault includes, but is not limited to, habitual intemperance or excesses, cruel treatment or outrages and abandonment. *Id*.

The trial court has great discretion in awarding final periodic support to a party not at fault. *West*, *supra*. Its determination will not be disturbed absent a clear abuse of discretion. *Id*.

After listening to the testimony and considering all other evidence concerning factors leading up to the divorce, the trial court found that neither party was free from fault in the breakup of the marriage. Having made that finding, the trial court denied Amber's request for permanent spousal support. We find no abuse of discretion in this decision. Therefore, this assignment of error is without merit.

*Gregory's appointment as domiciliary parent*

Amber argues that the trial court abused its discretion when it found it was in the best interest of the minor children for Gregory to be awarded the position of domiciliary parent in the shared custody arrangement dictated by the final judgment in January 2025. She asserts that she has proven there has been a material change in circumstances since the temporary custody decree when she was appointed as the domiciliary parent. Prior to the implementation of the 50/50 split, Gregory only had every other weekend visitation and took care of the children when Amber worked evenings until 8:00 p.m. She argues that once the temporary order was implemented and the couple began sharing custody 50/50, the children suffered a decline in

their mental and physical health, which she attributes to shifting the children around on a weekly basis.

Gregory argues that the trial court's judgment naming him as the domiciliary parent was proper and that there was no abuse of discretion in the ruling. He asserts that Amber cannot meet her burden of proving abuse of discretion because the trial court's decision was based on the uncontested report of the custody evaluator, Miley. The trial court described Miley's report as "gold" and then implemented custody in accordance with the report. For these reasons, he contends there can be no showing of an abuse of discretion by the trial court in rendering the judgment of shared custody and his appointment as domiciliary parent.

In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child. La. C.C. art. 131. The best interest of the child is the sole criterion to be met in making a custody award, as the trial court sits as a sort of fiduciary on behalf of the child and must pursue actively that course of conduct which will be of the greatest benefit to the child. *Hodges v. Hodges*, 15-0585 (La. 11/23/15), 181 So. 3d 700.

La. C.C. art. 134 provides the list of relevant factors to be considered by the court in determining the best interest of the child; however, that list is nonexclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. *Hodges*, *supra*, *citing* La. C.C. art. 134, 1993 Revision Comment (b). The illustrative nature of the listing of factors contained in article 134 gives the court freedom to consider additional factors; and, in general, the court should consider the totality of the facts and circumstances of the individual case. *Id*. The plain language

of La. R.S. 9:335 manifests the legislature's clear intent to establish a custodial system in which a child has a domiciliary parent and no more than one such parent. *Id.* Although each parent can share physical custody, the court can only designate a single domiciliary parent. *Id., citing*, La. R.S. 9:335(A)(2)(b) and (B)(1).

Custody determinations are made on a case-by-case basis, and the trial court has vast discretion in deciding the matters of child custody and visitation. *Watson v. Watson*, 45,652 (La. App. 2 Cir. 8/11/10), 46 So. 3d 218. This discretion is based on the trial court's opportunity to better evaluate the credibility of the witnesses. *Yerger v. Yerger*, 49,790 (La. App. 2 Cir. 2/27/15), 162 So. 3d 603. A trial court's determination in the establishment of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. *Thompson v. Thompson,* 532 So. 2d 101 (La. 1988); *Yerger, supra.*

The trial court addressed all of the factors of La. C.C. art. 134 and based its decision to name Gregory as the domiciliary parent on the report and testimony of the court-appointed custody evaluation expert, Miley, who found that he conveyed parenting insight into his weaknesses. The trial court's determination is entitled to great weight, and we find no abuse of discretion in this decision. Therefore, this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the judgment denying permanent spousal support to Amber Nichole Rasbury and appointing Gregory Rasbury as the

domiciliary parent is affirmed.  Costs of appeal are assessed to Amber

Nichole Rasbury.

**AFFIRMED.**